79,389-09,10,11

**LUKE A. STANTON**

#1830011 • TDCJ-CID Stiles Unit • 3060 FM 3514 • Beaumont, Texas  77705

Thursday, September 24, 2015

Clerk of the Court
Court of Criminal Appeals
of Texas
P.O. Box 12308
Capitol Station
Austin, Texas  78711

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 29 2015

Abel Acosta, Clerk

RE: Ex parte Luke Stanton
    CCA Cause No. WR-79,389-08; WR-79,389-09; WR-79,389-10
    Trl Cause No. F-2011-1911-C (whc #2); F-2011-1912-C (whc #2);
                  F-2011-1913-C (whc #2)

Dear Sir or Madam:

Please find enclosed the original: Applicant's Objections to the Trial Courts Finding of Fact, Conclusion of Law and Order recommending that relief be denied, to be submitted and filed.

Please have the Honorable Court of Criminal Appeals' take Judicial Notice that the Trial Courts Findings was answered on September 04, 2015. But yet, the Applicant received his copy on September 21, 2015, through the TDCJ Prison Legal Mail Department, thereby, Applicant is now filing his Objections on the above date. The Applicant has NOT received any other Notice of this Court receiving the Trial Courts ORDER of recommendations.

Please notify the Applicant upon the Courts filings.

Sincerely,

Luke Stanton  #1830011

cc: LARA TOMLIN
    Assistant District Attorney
    1450 E. McKinney st. 3rd Fl
    Denton, Texas  76209

CAUSE No. WR-79,389-08
TRIAL CAUSE No. F-2011-1911-C (WHC #2)
CAUSE No. WR-79,389-09
TRIAL CAUSE No. F-2011-1912-C (WHC #2)
CAUSE No. WR-79,389-10
TRIAL CAUSE No. F-2011-1913-C (WHC #2)

| | | |
|---|---|---|
| EX PARTE | § | IN THE |
| | § | COURT OF CRIMINAL APPEALS |
| | § | OF TEXAS, FROM THE |
| | § | 211th JUDICIAL COURT IN |
| LUKE STANTON | § | DENTON COUNTY, TEXAS |

## APPLICANT'S OBJECTIONS TO THE TRIAL COURT'S FINDING OF FACT, CONCLUSIONS OF LAW AND ORDER RECOMMENDING THAT RELIEF BE DENIED

Applicant Luke Stanton, 'pro se', makes his OBJECTIONS, in reply to the "ORDER", of the trial court adopts the State's proposed Finding of Fact and Conclusion of Law, which recommended that Applicant's application for writ of habeas corpus be denied, on September 04, 2015. Applicant received his copy of said ORDER on September 21, 2015, and in support, will show the following:

## BASIS OF OBJECTIONS

Applicant's challenging the convictions based on the law and facts, that the State Prosecutors and Defense Counsels committed "errors of a Constitutional magnitude" through-out "critical stages" of the judicial process. Applicant's 5th, 6th, and 14th Amendment rights to the United States Constitution and Texas Constitution's were violated. Thus rendering Due Process violations of clearly established State and Federal laws. Applicant moves this Court his objections arguing:

1. The Trial Judge is wrong on both, the law and fact;

2. Trial and Appellate Counsels did not provide effective assistance of counsel; and,

3. The Trial Judge makes the determination that, Applicant's colorable showing of the factual evidence, NOT presented at trial, did not HARM the Applicant, but yet gave him a fundamentally fair trial.

## STANDARD FOR GRANTING RELIEF

The T.C.C.P. Art. 11.07 Writ of Habeas Corpus is available only for post conviction relief from Jurisdiction Defects and violations of Fundamentally of Constitutional Rights. See Ex parte Adams, 768 S.W.2d 281 (Tex.Cr.App. 1989).

"In a post conviction collateral attack, the burden is on the applicant to allege and perhaps, attempt to prove facts which, if true, would entitle applicant to relief. See Ex parte Maldorado, 688 S.W.2d 114 (Tex.Cr.App. 1985), by showing that the complained of error did, in fact, contribute to the conviction or punishment. Ex parte Barber, 879 S.W.2d 889 (Tex.Cr.App. 1994). And, the standard of proof is by a preponderance of the evidence. Ex parte Adams, 768 S.W.2d 281; see also Ex parte Kunkle, 852 S.W.2d 499 (Tex.Cr.App. 1993).

As further, it should be kept in mind that the Court of Criminal Appeals' is not bound by the findings entered by the trial court either with or without a hearing. Ex parte Ramirez, 577 S.W.2d 261 (Tex.Cr.App. 1979); Ex parte Harris, 593 S.W.2d 330 (Tex.Cr.App. 1979); Ex parte Bates, 640 s.w.2d 894 (Tex.Cr.App. 1982); Ex Acosta, 672 S.W.2d 470 (Tex.Cr.App. 1984). However, while the Court is not bound by the trial court's findings, case law suggests that where the findings are supported by the record the Court of Criminal Appeals should follow them. Ex part Brandley, 781 S.W.2d 886 (Tex.Cr.App. 1989); see also Ex parte Adams, 768 S.W.2d 281 (Tex.Cr.App. 1989).

## APPLICANT'S CLAIMS RAISED

Applicant raised Five Grounds for relief, (Four - emanating from Brady violations), all of which may be considered as two claims: (1) Prosecutorial Misconduct, and (2) he was denied the effective assistance of counsels, at trial and on Appeal:

1. "BRADY" violations by Investigative Agencies: (App.Mem. at 13) (Denton PD Detective Reports, Video Clips and Text Messages Evidence.)

2. Prosecutor Misrepresents Physical Evidence: (App.Mem. at 16) (Trial Testimonies and Video Clips Recording actual dates.)

3. Bad-Faith Destruction of Potentially Exculpatory Evidence:(App.Mem. at 20) (2008 Investigative Reports, Video Clips and Text Message Evidence.)

4. Prosecutor's USE of perjured Testimony: (App.Mem. at 24) (State Witnesses, and a Grand Jury Referral Report.) And,

5. Ineffective Assistance of Trial and Appellate Counsels: (App.Mem. at 30)

## APPLICANT'S OBJECTIONS

In the State's Answer (State's Answer at 7) and State's Memorandum (State's Mem. at 4:3), the Trial Judge adopts implying, Applicant argues there was not sufficient evidence for a conviction. This is contrary to, Applicant's application for writ of habeas corpus, which clearly states: (1) evidence was withheld, (2) evidence presented was misrepresented, (3) evidence was destroyed, (4) State allowed false and/or perjured testimony, and (5) Trial and Appellate counsels were

- 2 -

ineffective in adequately representing their client. In that, "sentences and subsequent incarceration are results of a fundamental unfair trial." (App.Mem. at 2.) The Trial Judge is wrong, the sufficient evidence for the convictions were misrepresented and/or NOT all of the evidence was presented to the Factfinders to make a rational decision in the convictions.

As further, this Honorable Court of Criminal Appeals' should take Judicial Notice of the State's Answer, AGREES with Applicant's Proposed Findings of Fact, that the State, withheld and destroyed exculpatory evidence, and allowed perjured State witnesses testimony, as addressed in Applicant's Response to the State's Memorandum and Proposed findings of Fact and Conclusion of Law, submitted on the 11th day of September 2015.

### A  Applicant moves the Court - Factual Errors and Legal Errors

Applicant's objections to the Trial Judge's Finding of Fact in the ORDER, and cites the record in support of the facts proffered herein:

1.   . The Trial Judge incorrectly concludes that ADA Michael Dickens turned over all exculpatory or favorable evidence.

The Trial Judge's Finding of Fact, at 2, line 3 and 4, that:"Michael Dickens' affidavit states -- he provided ... all known ... evidence" (App. Exhibit AA). And, "there are emails and copy of discs ... turned over ..."(State's Exhibit C-H).

Applicant disagrees with the Trial Judge on ADA Michael Dickens' affidavit. In such, Mr. Dickens' affidavit was generated prior to Applicant filing a motion for favorable evidence to the accused on April 01, 2015, to wit: Video Clips Datum, (Discription, Date, and Time) of actual recordings on the Denton County Sheriff's Office - Criminal Investigation Division's Foray Server (see App. Exhibit M:1), in conjuction with several other request (see App. Mem. at 17 and 18), only to be resisted and/or denied. In Banks v. Dretke, 540 U.S. 668,696 (2004), the Supreme Court aptly stated: "A rule thus declaring 'Prosecutor may hide, defendant must seek,' is not tenable in a system Constitutionally bound to accord defendants due process." (See App. Response to the State's-- at 7).

Next, Applicant disagrees with the Trial Judge that all known evidence was turned over to the defense. The State concedes the Denton PD Detectives Investigative Report, statements, and trial testimony were withheld from the trial court and the defense. (See State's Answer at 6).

Finely, Applicant disagrees with the Trial Judge that all video clips and text messages were turned over to the defense. Defense received five video clips

and no text messages, nor did he read any text messages. (See App.Mem Exhibit S.) Nevertheless, the State sent Ten video clips and text messages to the EIGHTH District Court of Appeals' of Texas. (See State's Trial Exhibit 16.)

2.     The Trial Judge errors in determining that Applicant does not address how withheld exculpatory and/or mitigating evidence were favorable to his defense.

The Trial Judge's Finding -- at 2, line 6 and 7, that: "Denton PD Detectives and their investigative reports or missing text messages does not address a favorable defense by Applicant, nor shown withheld evidence was material.

First, Applicant disagrees with the Trial Judge, a recapitulation of the suppressed statement to the Denton PD Detectives in 2009 was essential to its investigation, and reveals that they were replete with significant inconsistencies in the complainants trial testimony. (See App. Mem. at 14.) Discloser would therefore have raised opportunities for the defense to attack the thoroughness and even the good faith of the investigation, and allowed the defense to question the probative value of certain crucial evidence. (See App.Mem at 14); Kyles, 115 S.Ct at 1571-73.

Next, Applicant disagrees with the Trial Judge, that: Text messages were not favorable, this was impeachment evidence. It is not evidence of guilt or innocence, but yet, evidence of credibility and truthfulness of the complainants, and their motivation to testify falsely against the accused. The withheld evidence allowed the State to deny Applicant the right to present a meaningful defense to effectively cross-examine the complainants R.B. and A.A. on their proposed summer-time "wild conduct" plans of "sex and drugs". Moreover, the text talk show the significant inconsistencies in the trial testimony (State's Trial Exhibit 16), and prevents the State Prosecutor from vouching for the credibility of the challenged witness'es. (RR6:5-6);(See App.Mem. at 15); Vela v. Estelle, 708 F.2d 954, 1983 U.S. App. LEXIS 26082 (5th Cir.).

Next, Applicant disagrees with the Trial Judge, that: the video clips were not favorable to Applicant. R.B. secretly took videos and testified that they are videos of Applicant, rubbing her feet and legs; there is no sexual abuse in any of her videos. (RR3:10-11). The jurors never got a full understanding of what actually took place without all the evidence to make a rational decision in the verdict. (See App. Mem. at 16.)

Finely, Applicant disagrees with the Trial Judge, that:Applicant has not shown any allegedly withheld evidence was material. (Trial Courts Finding -- at 2, Ln 7).

- 4 -

Accordingly, in the Merriam - Webster's Dictionary of Law: Defines:

Material Evidence: evidence that is likely to affect the determination of a matter or issue; Specif : evidence that warrants reopening of a claim or reversal of a conviction because but for the circumstances that the evidence was unavailable the outcome of the first proceeding would have been different. Id at 173 (2014)

Material Fact: a fact that affects decision making: as a: a fact upon which the outcome of all or part of a lawsuit depends b: a fact that would influence a reasonable person under the circumstances in making an investment decision. Id at 184 (2014).

Brady requires that the prosecution disclose evidence in its possession that is materially favorable to the accused. 373 U.S. at 87; Youngblood v. West Virginia, 547 U.S. 867, 869 (2006). (App.Mem. at 16). In the case at bar, all evidence was material and needed inrelations to the credibility and truthfulness of all three complainants, for the jurors to make a rational decision in the verdict.

3.      The Trial Judge erroneously determine that Applicant is challenging the evidence underlying his convictions.

First, Applicant disagrees with the Trial Judge, that: the jury was instructed that the State's statements ... not supported by the evidence are to be wholly disregarded. (State's Answer, Exhibit K-M);(Trial Courts Findings --- at 3, line 9). In that, Prosecution mislead the jurors that the 2008 cases were committed, in addition, to the 2009 case against R.B. that were both "Ruled-out". Then incredibly, the Prosecution vouches for the credibility of the complainants during closing arguments, when the non-disclosed evidence would have refuted the State's case. The jurors believed as they heard the prosecution plead their cases against the Applicant. The improper remarks by a prosecutor "are a sufficient ground for Habeas relief if they are so prejudicial that they render the trial fundamentally unfair." Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002). Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or ... the evidence was so insubstantial that (in probability) but for the remarks no conviction would have accured." Id. at 245. "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986).

Finely, Applicant disagrees with the Trial Judge that: there was no evidence that the State altered any phone evidence. (Trial Courts Findings -- at 3, line 10)

- 5 -

Applicant asserts that there is evidence of the State altering the phone-video clips. (See App.Mem. at 19); (App.Mem. Exhibit M:4.) Several factures should be considered, (A) the dates and times of the video clips are impossible, (B) the DCSO Extraction Report, clearly shows date and times of downloading evidence off the phone, to their computer system, (C) there's a recorded image, with a displayed date of "06-06-2011", when ONLY the DCSO had the phone in their possession, (see App.Mem. Exhibit M:3), and, (D) the State Prosecution still hides this related evidence. Ibid at 4.

As stated above, the State's Prosecution still hides the actual video clips recordings, Mr. Dickens, interjects his testimony of a June 01, 2011, date of the recordings to the complainant R.B. (in which does not remember), when he knew the dates were incorrect, to bolster the credibility of the witness, to obtain the conviction. The State concedes that, "even if the evidence was altered ... the content of the video was important, not the dates on the video." (State's Answer at 8). The Trial Judge is wrong, these cases of truthfulness and credibility i issues are the basis of the convictions, adjacent to the State's tampering with the evidence to obtain the convictions. Thereby, again, Applicant disagrees with the Trial Judge, that: the State did not use false evidence to convict Applicant. (See Trial Courts Proposed Finding of Fact at 3, line 11.)

Applicant agrees with the Trial Courts and Judge's recommendation that the Court should determine whether evidence gave the jury a false impression. (See State's Answer at 7.)

4.     The Trial Judge errors in determining that Applicant suffered no prejudice from the Destroyed Exculpatory and/or Mitigating Evidence.

Applicant disagrees with the Trial Judge, that: There was no evidence that the "ruled out" reports or content on R.B.'s smartphone were destroyed in Bad Faith. (Trial Courts Proposed Findings of Fact at 3, Line 13.)

Applicant asserts the destroyed evidence was potentially exculpatory, the failure to preserve the evidence hindered defense counsel's presentation of his case to the jury, for the jury to make a rational decision in the convictions. (See App.Mem. at 21.) And the likelihood the evidenc would have enabled the Applicant to exonerates himself appears to be greater than it was in Trombetta, but here, like Trambetta, the State did make use of the material evidence in its own case in chief.

In Arizona v. Youngblood, 488 U.S. 51, Justice STEVENS opinion, that the Supreme Court has held three factors are critical importance to evaluation of

a case: First, at the time the State failed to preserve the evidence and thus negligently lost potentially valuable evidence, they had at least as great interest in preserving the evidence as did the person later accused of the crime. Second, although it is not possible to know whether the lost evidence would revealed any relevant information, it is unlikely that the defendant was prejudiced by the State's omission. In examining the witnesses and their summation, ... the State failed to preserve evidence ... The State allowed evidence to be destroyed or lost whose contents or quality are an issue, you may infer that the true fact is against the State's interest. As result, the uncertainty as to what the evidence might have proved was turned to the defendant's advantage. Third, the fact that no juror could chose to draw the permissive inference that proper preservation of the evidence could have demonstrated that the defendant did not commit a crime suggest that the lost evidemce was "immaterial."

The Supreme Court cases make the above clear that "[t]he proper standard of materiality must reflect the Supreme Court's overriding concern with justice of finding of guilt," and that a State's failure to turn over (or preserve) potentially exculpatory evidence, therefore, "must be evaluated in the content of the entire record." U.S. v. Agurs, 427 U.S. 97, 112 (1976)(footnotes omitted); see also California v. Trombetta, 467 U.S. 479, 488 (1984)(the duty to preserve evidence "must be limited to evidence that might be expected to play a significant role in the suspect's defense."). (See App. Mem. at 23.)

As further, with the above factors in mind, in Arizona v. Youngblood, Justice STEVENS opinion announced a proposition of law that is much broader than necessary for the Texas Court of Criminal Appeals' to decide this case. The Court aptly stated:

"If a criminal defendant can show 'bad faith' on the part of the Police and/or State, failure to preserve potentially useful evidence constitutes a denial of due process of law."

In addition, to the Supreme Court Justice STEVENS opinion: "there may well be cases in which the defendant is unable to prove that the State acted in 'bad faith', but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair."

Youngblood, 488 U.S. at 60

In Brady v. Maryland, 373 U.S. 83 (1963) and U.S. v. Agurs, 427 U.S. 97 (1976). Those cases in no way require that government actions that deny a defendant access to material evidence be taken in bad faith in order to violate due process. In otherwords, Brady and Agurs could not be more clear in their holdings that a prosecutor's bad faith in interfering with a defendant's access to material evidence is not an essential part of a due process violation.

The negligent or reckless failure to preserve important evidence just cannot be "in accord with ... normal practice."

- 7 -

5.    The Trial Court Judge erroneously determines that Applicant has not shown that Investigator Crow made any misleading statements about the 2009 interviews with the intent to deceive the Court or the jury.
(Trial Courts Proposed Findings of Fact at 3, Line 13.)

Applicant disagrees with the Trial Judge, DCSO Investigator Crow ("Inv. Crow") mislead and/or falsified his requested Grand Jury Referral Report and then testified to his misleading or false report. In that, Inv. Crow never contacted the Children's Advocacy Center ("CAC"), or Investigator J.Edwards ("Inv. Edwards") on November 09, 2009, prior to the interviewing process'es, nor was he present during such procedures. (See App.Mem. at 24, 26);(App.Mem. Exhibit C:14). After Inv.Crow's interview with Applicant, and ploygraph examination, Inv. Crow unfounded his 2009 case. (See App.Mem. Exhibit C:18);(App.Mem. at 28). Inv. Crow found "NO Truth" in the complainants K.B.'s alleged allegation, and R.B. never alleged any sexual abuse in her statements. (See App.Mem. at 4);(App.Mem. Exhibits C:12-13.)

## Deceiving the Court

Applicant asserts that Inv. Crow knowingly and intentially filed a false and/or perjured Governmental Report to the Court, to obtain an Indictment against the Applicant. (See App.Mem. Exhibit E:1);(App.Mem. at 26.)

With the above in mind (Ibid at 8, line 5), Inv. Crow received the 2009 case on November 10, 2009, interviewed Applicant, and unfounded his case. On August 16, 2011, Inv. Crow received a phone call from ADA Michael Dickens with the Child Abuse Prosecution Unit, "mentally" coercing Inv. Crow to file his 2009 case as a Grand Jury Referral with the Denton County DA's Office. (See App.Mem. Exhibit E:1).

In that, Inv. Crow falsely filed that:

"On Monday morning November 9, 2009 Denton County Sheriff's Office Investigator Crow #1062 met with CPS Investigator Edwards, ... K.B., ... R.B., ... and K.S. ... for a follow-up investigation."

"During the interviews both girls described their step-father L.A.S. [Applicant] touching and grabbing their crotches and vaginas on numerous occasions ... ." (see App.Mem. at 26);(App.Mem. Exhibit E:1).

Incredibly, Inv. Crow's Governmental Report Document, Grand Jury Referral Report, is Contrary to, the CAC, Inv. Edwards' Governmental Report Document, Investigative Report dated January 14, 2010, in which states:

On November 10, 2009, I realized jurisdiction is in the County. I emailed Sgt. R.Griggs with DCSO, he responded back and assigned the case to Investigator Crow. Then she reports, I spoke with Inv. Crow regarding the case. I will drop off the girl's interviews ...". (See App.Mem. Exhibit C:14.)

- 8 -

On November 09, 2009, both girl's were given A/V Forensic Interviews.

Notwithstanding, <u>both</u> <u>girl's</u> did not describe their step-father L.A.S. sex-ually abusing them. R.B.'s statement was stated she was there because of the problems that the family is having with her sister [K.B.]. (See App.Mem. at 4); (App. Mem. Exhibit C:12-13.)

Here, Investigator Crow chose to testify falsely in the Grand Jury Proceeding or file a false affidavit report form. <u>Bryson v. U.S.</u>, 396 U.S. 64 (1969).

## Deceiving the Jury

Applicant asserts that Investigator Crow knowingly and intentionally presented false testimony to the jury, and the State knowingly used Inv. Crow's perjured testimony to obtain Applicant's convictions. In that, with the above in mind, Investigator Crow testified too:

State calls Inv. Crow to the stand. During the prosecutions process of influencing the jury with Inv. Crow's twenty Seven years experience at the DCSO, as the "GURU" investigator over the juvenile crimes (RR4:167), State promptly takes Inv. Crow to the 2009 investigation. The State asked him how the case got generated to him:

> [Crow]: CPS ... called me. and November 9th, 2009, is when I actually went to the CAC and observed the forensic interviews with CPS. (RR4:168-169)

> [State]: So November 9th, 2009 ... you go down there for the forensic interview ... is that right?

> [Crow]: Yes ma'am

> [State]: and you ... sat behind the one-way glass and watched the interviews?

> [Crow]: Yes, ma'am (RR4:168-169)

Basically, Inv. Crow's testimony was material evidence and harmful to the Applicant's convictions. The jury heard in detail, Inv. Crow went to the CAC, sat behind the one-way glass with the CPS investigators, observed the interviews in detail of K.B. and R.B. claiming the alleged sexual abuse. But yet, did not file his case until August 2011. And the State carefully tailored Inv. Crow's testimony with his thirty one years of experience to why he did not arrest the Applicant or file his case.

> [State]: Investigator Crow, in any of those years, have you ever made a mistake other than this one? (RR4:182)

Then the State moves to elicit Inv. Crow's testimony, if he knew that the girl's were at the CAC the year before, [in 2008].

- 9 -

[State]: ... you can't say for certain whether or not you knew about that when you did this investigation?

[Crow]: That's correct.

Incredibly, the CAC/CPS Investigative Report by Inv. Edwards, and on the A/V Forensic Interview Videos of K.B., R.B., and K.S. all state differently. Both K.B. and R.B., stated "we came to a place like this last year", and K.S. stated: "CPS made a report a few years ago." (See App.Mem. at 4-5):(App.Mem. Exhibits C: 12-14). In addition, Inv. Edwards puts in the Investigative Report, "I learned that in February of 2008 the B --- girl's were interviewed and made NO out-cry of sexual abuse." (App.Mem. at 28);(App.Mem. Exhibits C:12-14.)

Here, Inv. Crow's inadmissible testimony impacked the credibility of the complainants that resulted in the convictions. In fact, there can be little doubt that once the jury had retired to deliberations, the testimony which was improperly admitted probably became the most single most important piece of evidence, testimonial, against defendant, for "[t]he jury thus had before it the government's whole case against the defendant, or had but very slight effect." U.S. v. Brown, 451 F.2d 1231, 1233-34 (5th Cir. 1971). Moreover, the error is not rendered harmless by the fact that DCSO "agents had testified and were cross-examined on the same subject." Brown, supra, 451 F.2d at 1234. Finally, this was a case in which, on both the Sexual Assault of a Child and false swearing, the issue of paramount importance was whether the defendant had acted with willful intent. Of course, the jury believed that Petitioner could not possibly have hoped for acquittal on any of the charges. But yet, "the prosecution failed to inform the defense and the trial court that one of its witnesses had testified falsely." In Napue v. Illinois, 360 U.S. 264 (1959), the Court aptly stated "that a conviction obtained by the knowing use of such testimony must fall, and suggest that the conviction is invalid even when the perjured testimony is 'not the result of guile or desire to prejudice ... for its impack was the same, preventing, as it did, a trial that could in any real sence be termed fair.'" Id. at 270.

6.  The Trial Courts and Judge error in determining the Applicant received Effective Assistance of Trial and Appellate Counsels.

Applicant disagrees with the Trial Judge, that: Mr. Moore received all exculpatory or favorable evidence (Trial Courts Proposed Findings of Fact at 3, Ln 17). In that, Applicant asserts throughout many area's of his objections, his application for writ of habeas corpus, many request, letters, and motions to the trial courts requesting for the "Video Clips actual recordings DATUM [Descriptions, date and times]." And the State still withholds and/or hides exculpatory evidence.

- 10 -

Accordingly, both Trial and Appellate counsels, whose conduct when coupled denied Applicant an opportunity for the process of obtaining a New Trial, a "Critical Stage" process for which Applicant had sound bases for success. Applicant requested from Trial Counsel, to file for a New Trial, only to be informed that Appellate Counsel had to file. Then in October 1012, upon receiving the Appellate Counsel, at the county Jail, I requested Steven P. Poston to file for a New Trial, only to resisted and denied. (See App.Mem. Exhibit W).

Texas Rules 21.2 states: "A motion for new trial is a prerequisite to presenting a point of error on Appeal only when necessary to adduce facts not in the record."

Rule 21.3 (e): when evidence tending to establish the defendant's innocence has been destroyed or withheld, thus preventing its production at trial.

Applicant has presented overwelming evidence withheld from the trial courts!

## Ineffective Trial Counsel

Attorney's performance is deficient when it falls "below an objective standard of reasonableness" under prevailing professional norms and according to the necessity of the case. Ex parte Moore, 395 S.W.3d 152, 156-57 (Tex.Cr.App. 2013). Often, the courts refer to standards published by the American Bar Association and other similar sources as guides to determine prevailing professional norms. Strickland, 466 U.S. at 688-89 (citing ABA Standards for Criminal Justice (2nd ed. 1980)). However, publications of that sort are only guides because no set of detailed rules can completely dictate how best to represent a criminal defendant. See Id. at 688-89. The analysis of counsel's preformance begins with a strong presumption that their actions fell within the wide range of reasonable professional assistance. Id. at 689; See Frangias v. State, 392 S.W.3d 642, 653 (Tex.Cr.App. 2013).

An attorney's deficient performance prejudices an accused when there is a reasonable probability that the outcome of the judgment would have been different but for counsel's deficieency. Cox v. State, 389 S.W.3d 817, 819 (Tex.Cr.App.2012). A reasonable probability has been defined as a probability sufficient to undermine confidence in the outcome."Id. (quoting Strickland, 466 U.S. at 694).

With the above in mind, the State's answer clearly admits that some evidence was turned over, if that evidence is in the same as Applicant's Memorandum Exhibits then Trial counsel is ineffective for not presenting a favorable defense, thereby, prejudiced his client by his deficient performance. The outcome would have been different.

- 11 -

## Ineffective Appellate Counsel

Applicant and Trial Courts agree, Applicant advised his Appellate Counsel of the merits addressed in Applicant's application for writ of habeas corpus. (App.Mem. at 30);40-41);(Application at 14);(State's Answer at 14);(App.Mem. Exhibit W). But rather than investigating the issues, Counsel merely interviews the lead prosecutor and trial counsel, relying on an unpeachable response. Counsel's failure to investigate for relyable appealable evidence, making it unlikely that effective evidence would be uncovered, was unreasonable strategy. Soner v. Quarterman, 476 F.3d 349, 357-358 (5th Cir. 2007)

The American Bar Association states:

"It is the duty of the lawyer to conduct a prompt investigation of the case and to explore all avenues leading to facts relevant to the merits of the case and the penealty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities.

ABA Standard 4-4.1

This Court of Criminal Appeals' should find that Applicant's Appellate Counsel was ineffective for failing to address the merits on appeal.

## CONCLUSION AND PRAYER

Based on the foregoing, the Court should reject the Trial Courts Proposed Finding of Fact and Order, order an evidentiary hearing on one or more of the claims raised by the Applicant, grant the Application for writ of habeas corpus, and order any other appropriate relief.

Respectfully Submitted,

September 24, 2015
Date

Luke Stanton    #1830011
TDCJ – CID Stiles Unit
3060 FM 3514
Beaumont, Texas   77705

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of September 2015, a true and correct copy of the above foregoing was sent to LARA TOMLIN, Assistant District Attorney at 1450 E. McKinney St. 3Fl., Denton Texas 76209

Luke Stanton

- 12 -